UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULIE A. MONROE,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>               Defendant. | Case No. CV 07-8084-PJW<br><br>MEMORANDUM OPINION AND ORDER |

    Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred in: 1) failing to consider her spinal impairments and carpal tunnel syndrome in determining her residual functional capacity; and 2) finding her not credible. For the reasons explained below, the Court concludes that the ALJ's decision that Plaintiff was not disabled is supported by substantial evidence and is affirmed.

    Plaintiff first contends that the ALJ erred by failing to take into account the limitations caused by her spinal impairments and carpal tunnel syndrome in formulating her residual functional

capacity. (Joint Stip. at 10.) It appears that Plaintiff is also complaining that the ALJ erred at step two in determining that these impairments were not severe. (Joint Stip. at 10.) The Court will address the step-two issue first.

At step two of the five-step disability analysis, an ALJ is tasked with identifying those impairments that have more than a minimal effect on a claimant's ability to do basic work activities. *Powell v. Chater*, 959 F. Supp. 1238, 1242 (C.D. Cal. 1997). Basic work activities include "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling ("SSR") 85-28. The inquiry at step two is intended to be a *de minimis* screening device to allow the ALJ to dispose of groundless claims at an early stage. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Plaintiff contends that her carpal tunnel syndrome prevents her from prolonged writing or keyboarding and that her complaints are supported by positive electrodiagnostic studies. (Joint Stip. at 11.) She argues that, as a result, the ALJ should have found at step two that this was a severe impairment.

The Agency disagrees. It points out that, even though the electrodiagnostic studies were performed some time after Plaintiff underwent carpal tunnel release surgery, the tests do not establish that she suffered from any loss of function, which is the critical issue at step two.[1] (Joint Stip. at 13.)

---

[1] The administrative record does not contain any medical records from Plaintiff's carpal tunnel surgery. Nor is it clear from the
(continued...)

The resolution of this issue turns on an evaluation of the evidence. If Plaintiff's interpretation of the evidence is accepted, i.e., that she suffers from severe pain and limitations as a result of her carpal tunnel syndrome, her condition would amount to a severe impairment at step two. If, on the other hand, the Agency's interpretation of the evidence is accepted, i.e., that Plaintiff's carpal tunnel syndrome, which was "released" with surgery, did not limit her ability to perform basic work activities, then the ALJ did not err.

There is very little if any evidence that Plaintiff's carpal tunnel syndrome had an impact on her ability to work in June 2007. None of her doctors found that she was limited as a result of this condition. Nor did any of the Agency doctors who examined her or reviewed the medical records so conclude. In fact, when she was examined by an Agency orthopedic doctor in January 2006, she never even mentioned her carpal tunnel syndrome and complained only about her knee and her shoulder. (AR 170-74.) Plaintiff points out that an electrodiagnostic test performed in May 2006 showed some evidence of abnormality in the radial nerve. (AR 112.) Nevertheless, none of the doctors translated that abnormal finding into a functional limitation restricting Plaintiff's use of her hands. Thus, because there was no evidence that Plaintiff's carpal tunnel syndrome impacted her ability

---

[1] (...continued)
record when the surgery or surgeries took place. The ALJ found that in 2005 Plaintiff was "status post carpal tunnel release," but did not say as of when. (AR 23.) Plaintiff testified that she was diagnosed with carpal tunnel syndrome in 1995 and, some time thereafter, "received three surgeries in my right hand and two in my left." (AR 259). In May 2006, when she underwent the electodiagnostic testing, it was noted that the surgery was performed in 1997. (AR 111.)

to perform basic work activities, the ALJ did not err in failing to find at step two that Plaintiff's carpal tunnel syndrome was not a severe impairment. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).[2]

This same analysis applies to Plaintiff's complaint about the ALJ's treatment of her back ailments. Plaintiff alleges that she has thoracic and lumbar spine impairments that the ALJ completely overlooked at step two. She notes that there are MRI findings in the record that reveal "cord indentation at two levels of the thoracic spine, multi-level degenerative disc disease throughout the lumbar and thoracic spine, and moderate bilateral facet joint hypertrophy at L3-4 and L4-5 . . .." (Joint Stip. at 12.) The Agency argues that there is no evidence of functional limitations stemming from these ailments and, therefore, they were not severe.

The Court sides with the Agency here. None of the doctors has opined that Plaintiff's back problems limit her ability to perform basic work activities. Absent such evidence, the ALJ did not err in failing to conclude at step two that Plaintiff's back condition was a severe impairment.

Plaintiff argues that the ALJ erred when he failed to consider the impact of these impairments on her residual functional capacity. There is no merit to this argument.

---

[2] Plaintiff testified at the hearing that her carpal tunnel syndrome made it really difficult to hold a pen, to write, or to work on a keyboard for eight hours at a time. (AR 259, 260.) She also testified, however, that the limitations in the use of her arms was caused by a tumor near a nerve in her arm, not carpal tunnel syndrome. (AR 255, 260-62, 265-66.) Regardless, the ALJ found that she was not credible and, therefore, the Court does not find this evidence persuasive.

Despite the fact that the ALJ did not find Plaintiff's carpal tunnel syndrome and her back ailments severe impairments at step two, he was still required to consider the impact, if any, of those conditions on her residual functional capacity. *See* SSR 96-8p (("In assessing [residual functional capacity], the adjudicator *must* consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe.")(emphasis added)). In Plaintiff's view, the ALJ overlooked the limitations caused by these non-severe impairments in assessing her residual functional capacity. This contention is rejected. As discussed above, these ailments did not cause any functional limitations that would have affected Plaintiff's residual functional capacity. As such, the ALJ did not err in not taking them into account in formulating Plaintiff's residual functional capacity.

In her second claim, Plaintiff complains that the ALJ erred in finding her not credible. She argues that the reasons provided by the ALJ for discounting her testimony--no treating doctor had opined that her condition was disabling, her treatment had been conservative, and an examining doctor found that Plaintiff's knee was within normal limits--were insufficient as a matter of law. For the following reasons, the Court finds that the ALJ did not err.

ALJ's are tasked with judging the credibility of witnesses. In making a credibility determination, an ALJ may take into account ordinary credibility evaluation techniques. *Smolen,* 80 F.3d at 1284. Where, as here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some

of the symptoms alleged and did not find that she was malingering, (AR 23), he could only reject her testimony for specific, clear, and convincing reasons. *Smolen*, 80 F.3d at 1283-84.

The first reason proffered by the ALJ for rejecting Plaintiff's testimony was that no treating doctor had pronounced that she was disabled, which was contrary to Plaintiff's claim that she was. (AR 23.) This is a specific, clear, and convincing reason for rejecting her credibility. *See Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993) (upholding ALJ's rejection of claimant's allegations of pain based on fact that claimant's treating doctor found them to be "amplified"). Further, it is supported by substantial evidence in the record in that none of Plaintiff's doctors found her to be disabled.

Plaintiff takes exception to this finding. Though she concedes that none of her doctors opined that she was disabled, she notes that they were never asked to make such a determination. Though this is true, it does not mean that the ALJ was precluded from taking this fact into account in assessing Plaintiff's credibility. Plaintiff could have asked her doctors to render an opinion regarding her disability, but chose not to. Further, it is clear from reviewing the treating doctors' records, as the Agency doctors did, that they would not have opined that Plaintiff was disabled in June 2007, had they been asked.

The ALJ's second reason for rejecting Plaintiff's testimony, i.e., that Plaintiff had received conservative treatment, (AR 23), is also a legitimate reason for rejecting a claimant's credibility, *see Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005), and is supported by the record. Though Plaintiff claimed that her pain from her various ailments was debilitating, her doctors did not recommend nor

did she initiate an aggressive course of treatment. Rather, she treated her conditions, if at all, with non-narcotic pain killers. (AR 77.) And she repeatedly failed to appear for orthopedic treatment, causing her to be dropped as a patient. (AR 244 (chart note dropping Plaintiff as patient at orthopedic clinic because she "missed 3 or more app[ointmen]ts").)

Finally, the ALJ discounted Plaintiff's testimony because he found that her knee impairment was less severe than she claimed. (AR 23.) Again, this is a valid reason for discounting a claimant's testimony, *Matthews*, 10 F.3d at 680, and is supported by the record. (AR 173-74.)

In the end, the Court concludes that the reasons the ALJ gave for discounting Plaintiff's testimony were specific, clear, and convincing. As such, his finding that she was not credible is affirmed. The Court further finds that the ALJ did not err in failing to conclude at step two that Plaintiff's ailments were severe or in failing to consider any limitations caused by these ailments in assessing Plaintiff's residual functional capacity. For all these reasons, the ALJ's decision is affirmed.

IT IS SO ORDERED.

DATED: September 30, 2009

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\MONROE, P 8084\memorandum opinion.wpd